## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

_____

| | |
|---|---|
| **PATRICIA SIBLEY &** ) | |
| **EDWARD KENIMER, JR.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Civil Action** |
| **v.** ) | **File No. 1:12CV00305-SCJ-JFK** |
| ) | |
| **NATIONAL CITY MORTGAGE** ) | |
| **COMPANY; NATIONAL CITY** ) | |
| **BANK, N.A., PNC MORTGAGE,** ) | |
| **A DIVISION OF PNC BANK, NA;** ) | |
| **BANK OF AMERICA, NA; &** ) | |
| **UNIDENTIFIED INVESTORS,** ) | |
| **CREDITORS,  REAL PARTIES** ) | |
| **IN INTEREST & AGENTS  NOT** ) | |
| **YET  IDENTIFIED** ) | |
| ) | |
| **Defendants.** ) | |

_____ )

## FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

COME NOW, Patricia Sibley and Edward Kenimer, Jr. the Plaintiffs herein

and pursuant to an Order of the Court dated April 27, 2012 file this First Amended

Verified Complaint for Damages and Injunctive Relief stating as follows:

## Parties and Jurisdiction

### 1.

Patricia Sibley and Edward Kenimer, Jr. (hereinafter the Plaintiffs) are husband and wife residing in Fulton County, Georgia.

### 2.

Defendant PNC Bank, N.A. (hereinafter PNC) is a National Bank Association chartered in Delaware.  Defendant PNC Bank, N.A. is a major lender and residential loan servicer doing business in Georgia and having many branch bank locations in Georgia.  Defendant PNC Bank, N.A. maintains a registered agent for service in Georgia, to wit: Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, GA 30092.

### 3.

Defendant PNC Mortgage, a division of PNC Bank, N.A. is the mortgage servicing operation of PNC Bank, N.A.  PNC Mortgage is a trade name for PNC, N.A.

### 4.

Defendant National City Bank, N.A. was a national bank association with its principal place of business in Ohio.  Defendant National City Bank, N.A. was acquired by Defendant PNC Bank, N.A. by merger in 2008 and no longer exists.

5.

Defendant National City Mortgage Company was an Ohio corporation which was merged out of existence into National City Bank, N.A. in 2008.

6.

Defendant Bank of America, N.A. is a national bank association chartered in Charlotte, North Carolina.  Defendant Bank of America, N.A. is a major lender and residential loan servicer doing business in Georgia and having many branch bank locations in Georgia.  The principal place of business for Defendant Bank of America, N.A. is located at Bank of America Corporate Center, 100 North Tryon Street, Charlotte, North Carolina.

7.

This Court has diversity jurisdiction under 28 USC § 1332.

8.

This Court has federal question jurisdiction under 28 USC § 1331for claims under the Truth In Lending Act, 15 U.S.C. 1640 (e).

**Factual Allegations**

9.

The Plaintiffs own a home at 4402 Whitewater Creek Road NW, Atlanta, Georgia 30327 (hereinafter the Property).

10.

The legal description of the Property where the house is located is:

All that tract or parcel of land lying and being in Land Lot 214, 17th District,

Fulton County, Georgia, Being Lot 2, Block E, Section Two of Whitewater Creek

Colony, as per plat recorded in Plat Book 87, Page 70, Fulton County Georgia

Records, which plat is incorporated  herein and made a part hereof by reference.

11.

The Plaintiffs refinanced their home with Brookhaven Mortgage on June 28,

2002, executing a note and Security Deed.

12.

Brookhaven Mortgage sold the loan and the Security Deed was then

assigned to Defendant National City Mortgage Company in July, 2002.

13.

The Plaintiffs made regular mortgage payments and made additional

payments to reduce the principal of the loan from 2002 until 2010.

14.

At some point the Plaintiffs were informed that Defendant PNC Bank, N.A.

had acquired National City Bank, N.A. and they began to deal with Defendant

PNC.

15.

The Plaintiffs are a teacher and a successful Atlanta business woman.

16.

In 2009 the Plaintiffs advertising business was hit hard by the recession and their income was reduced, but continued to make their mortgage payments.

17.

As a result the bad economy and reduced income, the Plaintiffs wrote a letter to PNC Mortgage on January 18, 2010 explaining their hardships and requesting a loan modification, pointing at how much they had paid, and just asking that the loan be re amortized from a 15 year to a 30 year mortgage.

18.

On April 1, 2010 the Plaintiffs closed their advertising business.

19.

In May 2010 the Plaintiffs called Defendant PNC and asked them about a loan modification and discussed their circumstances with a PNC representative.

20.

The Plaintiffs received correspondence from Defendant PNC beginning May 24, 2010 and began the process of sending in extensive documentation to Defendant PNC for the Loan Modification.

21.

Over a 1 year period from June 2010 to June 2011, the Plaintiffs sent in the same or similar loan modification packets 5-6 different times, only to be told it was lost or never sent, additional information was required or some other excuse even though the Plaintiffs already provided the documentation that Defendant PNC needed to process the request for modification.

22.

In June of 2010 the Plaintiffs were informed by Defendant PNC that they were not eligible for a loan modification because they were not behind on their mortgage payments.

23.

The Plaintiffs missed their mortgage payments in July, August and September, 2010 and were told each month that they were not behind enough to be considered for a loan modification.

24.

In September the Plaintiffs were informed by Defendant PNC that their account had been referred to the foreclosure committee.

25.

The Plaintiffs also received a foreclosure notice from the law firm of

McCurdy & Candler dated September 27, 2010.

26.

The letter from McCurdy & Candler identified the creditor as Defendant Bank of America, N.A.  This was the first time that the Plaintiffs had any idea the Defendant Bank of America, N.A. had anything to do with their loan.

27.

The letter from McCurdy & Candler also represented that Defendant PNC was the entity with full authority to discuss, negotiate or change all terms of the mortgage.

28.

The Plaintiffs contacted PNC Mortgage regarding the information the Plaintiffs had received and also reminding PNC that the Plaintiffs had sent a hardship letter in January 2010 before the Plaintiffs were ever behind in their payments.

29.

About the same time, the Plaintiffs received correspondence from Defendant PNC dated September 29, 2010 referring them to the Home Affordable Modification Program (HAMP).

30.

For the HAMP program, the Plaintiffs dutifully sent more and repeated loan modification packets in October, November, and December.  PNC dropped the Plaintiffs from the HAMP program and allegedly put them in the Making Home Affordable program in November 2010.

31.

The Plaintiffs continued to send repeated information to PNC and they would respond wanting more.

32.

The Plaintiffs would call Defendant PNC and would be told that they were not communicating and were told they could only speak to Edom. The Plaintiffs called repeatedly for Edom, including Oct 4th, Oct 7th, Oct 14th, Oct 19th, Oct 24th, Oct 26th, Nov 4th, Nov 15th, Nov 17th, Dec 15th of 2010, Feb 21st, Jan 1, and Jan 22nd, of 2011.  The Plaintiffs despite these repeated efforts were unable to reach this person.

33.

Throughout 2011, there was no change. The Plaintiffs would get letters from Defendant PNC refusing to assist the Plaintiffs, to which the Plaintiffs would retort with detailed responses to Defendant PNC's inaccurate assessments based on their

lack of representatives.   The Plaintiffs continually sent more documentation and responded to every inquiry from Defendant PNC.

34.

In May the Plaintiffs were offered a chance to attend a public event to be held in June in which Defendant PNC was participating.

35.

At the event, the Plaintiffs were met by Lisa Gibson of Defendant PNC who was unfamiliar with the Plaintiffs situation. The Plaintiffs took all their paperwork again, received a notice, and made a proposal that was not considered. The Plaintiff's proposal was to reamortize their mortgage from a 15 year to a 30 mortgage. The Plaintiffs never received a response.

36.

About June 1, 2011 the Plaintiffs received a foreclosure letter from the law firm of McCurdy & Candler, LLC.  The letter and attached Notice of Sale Under Power informed the Plaintiffs that their home would be sold on the Courthouse steps on July 5, 2011.

37.

 The Plaintiffs received another letter from McCurdy & Candler stating that the payoff was $121,188.92 by June 29th. In response Plaintiffs had offered to pay off

$41,000 if the loan was reamortized, but the offer was ignored.

38.

The Plaintiffs also noted that in the McCurdy & Candler payoff notice, it included $4,817.71 in junk fees, attorney's fees, and other items.

39.

In reviewing Court records the Plaintiffs learned that Bank of America, N.A. had received an Assignment of the Security Deed recorded on March 7, 2011. The assignment to Defendant Bank of America, N.A. occurred well after the loan had gone into default.  The Plaintiffs never received notice of this transfer of ownership.

40.

During June the Plaintiffs were constantly requested to provide additional and different financial data, to which we complied.  The Plaintiffs then spoke again to Lisa Gibson asking her who the real creditor was since the Plaintiffs had never heard from Defendant Bank of America.

41.

The Plaintiffs were told by Lisa Gibson of Defendant PNC that their loan was owned by an unidentified private investor who would not accept a modification.

42.

The Plaintiffs have never received any notice that their loan had been sold, transferred or assigned to either Defendant Bank of America or the unknown private investor.

43.

It was clear from our conversations with Lisa Gibson of Defendant PNC that contrary to the assertions in the foreclosure letter from McCurdy & Candler, this unknown private investor was the only person or entity that could change the terms of the mortgage.

44.

Lisa Gibson of Defendant PNC had told the Plaintiffs that they might hear from them about holding off on the foreclosure to work through this loan modification, and the earliest would be 72 hours before the foreclosure which meant Friday July 1, 2011. On Friday morning Plaintiffs sent an email to Lisa Gibson asking about any news on the foreclosure, but received no response.

45.

The July foreclosure sale was canceled and the Plaintiffs continued to try and work through a modification.

46.

As the Plaintiffs spoke with Lisa Gibson again she stressed that individual investors owned the loan and they required the Plaintiffs to pay off all they owed and then the investors would consider a loan modification. The Plaintiffs explained that they had been offering pay offs and trying to work out a loan modification before they were not current, but could never get a straight answer.

47.

The Plaintiffs were constantly harassed on the phone, by people driving by and taking pictures, and an agent of Defendant PNC drove up into their driveway, almost hit them with his car, and accosted the Plaintiffs, refusing to identify himself but trying to knock Plaintiffs down to put a notice on our door. The Plaintiffs filed some criminal trespass charges against the individual and spoke to the Atlanta police numerous times about the harassment and trespass.

48.

As a direct result of the Defendants' actions the Plaintiffs had to hire attorneys and experts to help them.

49.

The Plaintiffs' attorneys sent a Qualified Written Request pursuant to

RESPA, 12 USC § 2605 (e) to Defendant National City, Defendant PNC, and

Defendant Bank of America on December 2, 2011 before the Plaintiffs received

the last letter from McCurdy & Candler.

50.

By letter dated December 2, 2011 the Plaintiffs received their 4th set of

foreclosure letters from McCurdy & Candler. This time it listed Defendant

National City Mortgage Co. as the creditor. This was untrue as National City

Mortgage Co. no longer existed and any interest it might have had been assigned to

Defendant Bank of America.  Further, any indebtedness to Defendant National

City/PNC was satisfied when the loan was sold to the unknown investor.

51.

The Plaintiffs watched the Fulton County Daily Report and discovered that

during December 2011, the published Notice of Sale Under Power showed

National City Mortgage Co. as the creditor on December 5, 12, and 19; but then on

December 27, 2011 the advertisement had been changed and Defendant Bank of

America was advertising as the creditor.

52.

By letter dated December 21, 2011 Defendant Bank of America responded

to the Qualified Written Request stating that they were neither the originator nor

servicer of the loan.

53.

The Plaintiffs have paid to have their loan examined and have discovered that their loan had been sold and placed in a privately issued security. The security is identified by Bloomberg as RESIF 2003-D A1 issued by RESI Finance Limited Partnership.

54.

A RESI or Real Estate Synthetic Investment is a security collateralized by a pool of mortgages like many mortgage-backed securities (MBS). However, unlike other MBS, a RESI passes along any loss incurred from an underlying mortgage to an investor. Thus, if a property ever goes into foreclosure and there is insufficient value received from the sale of the property to satisfy the outstanding mortgage principal and accrued interest, then that loss is passed on to the investor. The security is divided into several tranches with the lowest rated tranche incurring the first losses and then each successively rated tranche incurring the next losses if the first tranche is liquidated by accumulated losses. In exchange, the lowest rated tranche receives a very high market interest rate in the form of a margin over LIBOR.

55.

In a mortgage backed security a trust is formed which pools many mortgage loans and then in essence sells shares in the pool to investors.

56.

Generally in mortgage backed securities it is the duty of the Trustee to ensure that both the mortgage note and the security deed are transferred to the trust prior to the closing of the trust.

57.

The Plaintiff's Security Deed was never assigned to the trust and the Plaintiffs believe that the trust was closed long ago.

58.

On information and belief the Plaintiffs allege Defendant Bank of America, N.A. is not the owner of the loan, servicer of the loan nor trustee of the RESIF 2003-D investment trust.

59.

On information and belief the Plaintiffs allege that Defendant Bank of America, N.A. is not the holder of a properly endorsed note.

## CLAIMS

### Count 1
### Wrongful Foreclosure
### Failure to Give Notice Pursuant to O.C.G.A. § 44-14-162.2

Plaintiffs refer and incorporate by reference paragraphs1 through and including paragraph 58 above as if fully set forth herein.

60.

O.C.G.A. § 44-14-162.2 requires that Notice of the initiation of proceedings to exercise a power of sale in a mortgage, security deed, or other lien contract shall be given to the debtor by the secured creditor no later than 30 days before the date of the proposed foreclosure. Such notice shall be in writing, shall include the name, address, and telephone number of the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor.

61.

O.C.G.A. § 44-14-162.2 (b) further requires that the notice required by subsection (a) of this Code section shall be given by mailing or delivering to the debtor a copy of the notice of sale to be submitted to the publisher.

62.

The letter dated December 2, 2011 by which the law firm of McCurdy & Candler attempted to comply with O.C.G.A. § 44-14-162.2 was false and misleading in that it misidentified the secured creditor as Defendant National City Mortgage Co. when it no longer existed and any interest it may have had had been

assigned to Defendant Bank of America, N.A.

63.

The letter dated December 2, 2011 by which the law firm of McCurdy &
Candler attempted to comply with O.C.G.A. § 44-14-162.2 was false and
misleading in that it misidentified PNC Mortgage, a division of PNC Bank,
National Association as the entity with full authority to negotiate and change all
terms of the mortgage.  Only the unidentified investor had the authority to change
the terms of the mortgage and because of the concealment of the secured creditors
identity the Plaintiffs were denied any opportunity to negotiate directly with the
party with authority to change the terms of their mortgage.

64.

At no time has the Defendant PNC or its attorneys identified the true secured
creditor for the Plaintiff's mortgage.  And have intentionally and actively
concealed the true identity of the investor or secured creditor.

65.

There is a statutory duty upon the Defendants to exercise fairly and in good
faith the power of sale in a deed to secure debt.  O.C.G.A. § 24-2-114.

66.

The Defendants are sophisticated major financial institution and among the

largest lenders and servicers of residential mortgages.  The Defendants are well aware of the laws regarding foreclosure in Georgia.

67.

The Defendants by attempting to foreclose and sell the Plaintiffs' property without the compliance with the notice provisions of O.C.G.A. § 44-14-162.2 prior to the attempted foreclosure demonstrates reckless disregard for the rights of the Plaintiffs and a conscious indifference to the consequences of their actions.

68.

The Defendants by attempting to foreclose and sell the Plaintiffs property without the compliance with the notice provisions of O.C.G.A. § 44-14-162.2 prior to the attempted foreclosure demonstrates bad faith and a disregard for their obligations under  O.C.G.A. § 24-2-114.

69.

But for the Plaintiffs' attorneys obtaining a Temporary Restraining Order on the prior to the foreclosure, the Defendants would have sold the Plaintiffs' Property at the Courthouse steps on January 3, 2012.

70.

As a direct and proximate result of the conduct of the Defendants, the Plaintiffs' suffered great mental anguish, humiliation, concern, worry, and

wounded feelings.

71.

As a direct and proximate result of the conduct of the Defendants, the Plaintiffs' have suffered pecuniary loss in the expenditure for attorney's fees, expert fees and associated costs and expenses.

72.

As a direct and proximate result of the conduct of the Defendants, the Plaintiffs have suffered pecuniary loss in the form of additional interest, costs and fees levied by the Defendants.

**Count 2**
**Wrongful Foreclosure**
**Failure to Advertise the Sale pursuant to O.C.G.A. § 44-14-162**

Plaintiffs refer and incorporate by reference paragraphs1 through and including paragraph 58 above as if fully set forth herein.

73.

O.C.G.A. § 44-14-162 requires that a foreclosure sale be advertised for four weeks as provided for in sheriff's sales. O.C.G.A. § 9-13-140.

74.

O.C.G.A. § 44-14-162.2 (b) requires that a copy of the notice to be published be given to the debtor at least 30 days prior to the foreclosure sale.

75.

By letter dated December 2, 2011 from the law firm of McCurdy & Candler the Plaintiff was provided a copy of a Notice of Sale Under Power which falsely identified National City Mortgage Co. as the secured creditor.

76.

This Notice was published in the Fulton Daily Report for three weeks on December 5, 12 and 19.

77.

On December 27, 2011 the Notice that was published had been changed to show Defendant Bank of America, N.A. as the creditor.

78.

Defendant Bank of America, N.A. did not give 30 days' notice nor publish for four weeks prior to the proposed foreclosure sale.

79.

Defendant National City Mortgage Co. did not publish for four weeks prior to the proposed foreclosure sale.

80.

There is a statutory duty upon the Defendants to exercise fairly and in good faith the power of sale in a deed to secure debt.  O.C.G.A. § 24-2-114.

81.

The Defendants are sophisticated major financial institution and among the largest lenders and servicers of residential mortgages.  The Defendants are well aware of the laws regarding foreclosure in Georgia.

82.

The Defendants by attempting to foreclose and sell the Plaintiffs' property without the compliance with the notice provisions of O.C.G.A. § 44-14-162 prior to the attempted foreclosure demonstrates reckless disregard for the rights of the Plaintiffs and a conscious indifference to the consequences of their actions.

83.

The Defendants by attempting to foreclose and sell the Plaintiffs' property without the compliance with the notice provisions of O.C.G.A. § 44-14-162 prior to the attempted foreclosure demonstrates bad faith and a disregard for their obligations under O.C.G.A. § 24-2-114.

84.

But for the Plaintiffs' attorneys obtaining a Temporary Restraining Order on the prior to the foreclosure, the Defendants would have sold the Plaintiffs' Property at the Courthouse steps on January 3, 2012.

85.

As a direct and proximate result of the conduct of the Defendants, the Plaintiffs suffered great mental anguish, humiliation, concern, worry, and wounded feelings.

86.

As a direct and proximate result of the conduct of the Defendants, the Plaintiffs have suffered pecuniary loss in the expenditure for attorney's fees, expert fees and associated costs and expenses.

87.

As a direct and proximate result of the conduct of the Defendants, the Plaintiffs have suffered pecuniary loss in the form of additional interest, costs and fees levied by the Defendants.

**Count 3**
**Wrongful Foreclosure**
**Defendants Lack Standing to Foreclose**

Plaintiffs refer and incorporate by reference paragraphs1 through and including paragraph 58 above as if fully set forth herein.

88.

In its letter dated December 2, 2011 the Defendants through their attorney represented that National City Mortgage Co. was the entity seeking to foreclose on

the Property.

89.

National City Mortgage Co. no longer existed at that time.

90.

Any interest that National City Mortgage Co. may have had in the Property was assigned to Defendant Bank of America, N.A. on February 11, 2011.

91.

In previous correspondence and in the Notice of Sale Under Power published on December 27, 2011 the Defendants through their attorney represented that Defendant Bank of America, N.A. was the entity seeking to foreclose on the Property.

92.

The Security Deed has been assigned to Defendant Bank of America, N.A. However, Defendant Bank of America, N.A. has also represented to the Plaintiffs that it was neither the originator nor servicer of the mortgage.

93.

The Plaintiffs' loan was sold to an investor which Plaintiff believes was an investment trust identified as RESIF 2003-D.

94.

Georgia law requires the entity foreclosing to hold both the note and security deed.

95.

Defendant Bank of America, N.A. does not hold a properly endorsed note which would authorize it to exercise the power of sale provision in the Security Deed.

96.

Defendant Bank of America, N.A. in April of 2011 entered into a Consent Order with the Comptroller of the Currency that among other things required the Defendant Bank of America, N.A. to ensure that it possessed both the note and security deed at all times during the foreclosure process. Comptroller of the Currency, In the Matter of Bank of America, N.A.,  Matter Number AA-EC-11-12

97.

The real party in interest is the investor that owns the loan.

98.

There is a statutory duty upon the Defendants to exercise fairly and in good faith the power of sale in a deed to secure debt.  O.C.G.A. § 24-2-114.

99.

The Defendants are sophisticated major financial institution and among the largest lenders and servicers of residential mortgages.  The Defendants are well aware of the laws regarding foreclosure in Georgia.

100.

The Defendants by attempting to foreclose and sell the Plaintiff's property without an enforceable legal interest demonstrates reckless disregard for the rights of the Plaintiffs and a conscious indifference to the consequences of their actions.

101.

But for the Plaintiffs' attorneys obtaining a Temporary Restraining Order on the prior to the foreclosure, the Defendants would have sold the Plaintiffs' Property at the Courthouse steps on January 3, 2012.

102.

As a direct and proximate result of the conduct of the Defendants, the Plaintiffs suffered great mental anguish, humiliation, concern, worry, and wounded feelings.

103.

As a direct and proximate result of the conduct of the Defendants, the Plaintiffs have suffered pecuniary loss in the expenditure for attorney's fees, expert

fees and associated costs and expenses.

104.

As a direct and proximate result of the conduct of the Defendants, the

Plaintiffs have suffered pecuniary loss in the form of additional interest, costs and

fees levied by the Defendants.


**Count 4**
**Truth in Lending Violation**

Plaintiffs refer and incorporate by reference paragraphs1 through and

including paragraph 58 above as if fully set forth herein.

105.

On March 7, 2011 Defendant Bank of America, N.A. recorded an

Assignment of Security Deed in Fulton County.  Book 49887/ Page 666.

106.

Defendant Bank of America, N.A. claims to be the Plaintiffs' creditor with

authority to foreclose.

107.

15 U.S.C. § 1641 (g) requires a new creditor to give notice to the borrower

within 30 days of an assignment.

108.

The Plaintiffs never received a notice of the assignment or that Defendant Bank of America, N.A. was a new creditor.

109.

If Defendant Bank of America, N.A. is a new creditor then it failed to give notice to the Plaintiffs as required by 15 U.S.C. § 1641 (g)

110.

As a direct and proximate result of the violation the Plaintiffs have suffered pecuniary loss in the form of additional interest, costs and fees levied by the Defendants.

111.

Defendant Bank of America, N.A. is liable for statutory damages pursuant to 15 U.S.C. § 1640 (a) (2).

112.

Defendant Bank of America, N.A. is liable for costs and reasonable attorney's fees. 15 U.S.C. § 1640 (a) (3)

## Count 5
## Servicer Abuse

Plaintiffs refer and incorporate by reference paragraphs1 through and including paragraph 58 above as if fully set forth herein.

113.

There is a statutory duty upon the Defendants to exercise fairly and in good faith the power of sale in a deed to secure debt.  O.C.G.A. § 24-2-114.

114.

Defendant PNC entered into a Consent Order with the Comptroller of the Currency changing the way that loans are serviced and requires, among other things, that reasonable good faith efforts are used in loss mitigation and foreclosure prevention for delinquent loans. Comptroller of the Currency, In the Matter of PCN Bank, N.A.,  Matter Number AA-EC-11-17.

115.

Defendant PNC has shown pattern of bad faith, unreasonableness and unfairness in its dealings with the Plaintiffs.

116.

Defendant PNC falsely informed the Plaintiffs that their loan had to be 90 days in arrears in order to consider a loan modification.

117.

Defendant PNC failed to provide a single point of contact regarding their loan modification or providing one that was never available to discuss the Plaintiffs' situation.

118.

Defendant PNC repeatedly had the Plaintiffs resend their documentation claiming that it had never been received or lost.

119.

Defendant PNC repeatedly had the Plaintiffs noticed of a pending foreclosure sale while the loan modification negotiations were ongoing.

120.

Defendant PNC repeatedly refused to identify the true owner of the Plaintiffs' loan.

121.

Defendant PNC preceded to foreclosure before a final written denial of their loan modification request was provided to the Plaintiffs.

122.

Defendant PNC proceeded to foreclosure while a Qualified Written Request under the Real Estate Settlement Procedures Act (RESPA). 12 U.S.C. § 2605 (e) was pending.

123.

As a direct and proximate result of the conduct of the Defendants, the Plaintiffs' suffered great mental anguish, humiliation, concern, worry, and wounded feelings.

124.

As a direct and proximate result of the conduct of the Defendants, the Plaintiffs' have suffered pecuniary loss in the expenditure for attorney's fees, expert fees and associated costs and expenses.

125.

As a direct and proximate result of the conduct of the Defendants, the Plaintiffs have suffered pecuniary loss in the form of additional interest, costs and fees levied by the Defendants.

**Count 5**
**Injunctive Relief**

Plaintiffs refer and incorporate by reference paragraphs1 through and including paragraph 56 above as if fully set forth herein.

126.

No adequate remedy at law is available to the Plaintiff if the Defendants foreclose and sell the Plaintiff's Property.  The injury that will result is imminent and irreparable.

127.

Plaintiff is entitled to an injunction enjoining the Defendants from foreclosing and selling the Plaintiff's Property.

WHEREFORE, the Plaintiff prays and demands:

1)  A trial by a jury;

2)  An Order enjoining the Defendants from foreclosing and selling the Property located at 4402 Whitewater Creek Road, NW, Atlanta, Fulton County, Georgia;

3) That the interlocutory injunction be made permanent upon the final disposition of this case;

4) Actual Damages, in an amount to be determined at trial;

5) Statutory damages provided under the pursuant to the Truth in Lending Act, 15 U.S.C. § 1640 (a) (2).

6) Reasonable Attorney's fees as determined by the Truth in Lending Act, 15 U.S.C. § 1640 (a) (3).

7) Such other and further relief as the Court finds just, proper and equitable.

      Respectfully submitted,


           /s/ Robert Thompson, Jr._____
           THOMPSON LAW GROUP, LLC
           Robert Thompson, Jr., Esq.
           Georgia Bar No. 709750
           H. Kirk Henson, Esq.
           Georgia Bar No. 197411

           Mailing Address:
           THOMPSON LAW GROUP, LLC
           P.O. Box 53484
           Atlanta, Georgia 30355

Telephone: (404) 816-0500
Facsimile: (404) 816-6856
rthompson@thomlaw.net

Street Address:
THOMPSON LAW GROUP, LLC
Ivy Place
3423 Piedmont Road, Suite 530
Atlanta, Georgia 30305

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served counsel for the Defendant with a true and correct copy of the foregoing First Amended Verified Complaint for Damages and Injunctive Relief via CM/ECF electronic filing system and by depositing the same in the United States Mail with adequate postage affixed there to and addressed as follows:

Jonathan C. Lippert
Gary C.Tepper
Ballard Spahr LLP
601 13th Street, NW
Suite 1000 South
Washington, D.C. 20005-3807

This 18th day of May, 2012.

/s/H. Kirk Henson_____
H. Kirk Henson
GBN: 348088
Counsel for Plaintiff